UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QUANTUM MEASUREMENTS CORP.,

    Plaintiff,

vs.                                     Case No. 8:09-CV-2091-T-27AEP

DRUCK, INC., et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Druck, Inc.'s motion for partial summary judgment (Dkt. 114). Druck contends that Quantum Measurements Corp.'s breach of contract claims are barred by the statute of limitations. The Court agrees that Florida's statute of limitations bars Quantum's claim for breach of the first contract and that Connecticut's statute of limitations bars a portion of its claim for breach of the second contract. Druck has also requested partial summary judgment on several additional grounds. None are ripe for summary judgment. Accordingly, the motion for partial summary judgment (Dkt. 114) is due to be GRANTED *in part* and DENIED *in part.*

### Background

Druck appointed Quantum as its exclusive representative for certain products in a territory that included parts of Florida. Under the parties' arrangement, Quantum was entitled to receive a commission for orders that had a relationship with its territory. Quantum alleges that Druck failed to pay certain commissions that were due and owing.

Two contracts govern the parties' relationship. The first contract was effective from January 1, 1991 to June 29, 2001. The second was effective from June 29, 2001 to April 3, 2008. Any orders Druck received before June 29, 2001 were subject to the first contract. (Dkt. 121-1, Friedland

11/17/10 Dep. at 91). Orders received after that date were governed by the second contract. (*Id.*).

Quantum commenced this action on June 8, 2009. Druck has moved for summary judgment, arguing that Florida's five year statute of limitations bars Quantum's claim under the first contract, and that Connecticut's six year statute of limitations bars part of its claim under the second contract. Quantum contends that Connecticut law governs both contracts and, under Connecticut law, the statute of limitations must be tolled by the 'continuing course of conduct' doctrine.

### Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All justifiable inferences and all reasonable doubts about the facts should be resolved in favor of the nonmoving party. *Id.* The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

### The first contract

The first contract does not contain a choice of law provision. At the summary judgment stage, the parties' dispute centers on whether Florida law or Connecticut law applies. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of

the forum state." *Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009) (quotation omitted). "Under Florida's conflicts of law rules, the doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying governing law, a contract, other than one for performance of services, is governed by law of the state in which the contract is made." *Shaps v. Provident Life & Accident Ins. Co.*, 826 So. 2d 250, 254 n.3 (Fla. 2002). It is undisputed that Druck executed the contract in Connecticut and that Quantum executed it in Florida. Where a contract was executed in two different states, the relevant question is where the contract was last signed. *D.L. Peoples Group, Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002).

The evidence overwhelmingly shows that Quantum was the last party to sign the contract. The execution date appears in handwriting just below each party's signature. (Dkt. 18-1, Am. Compl. Ex. A). The date beneath the signature of Druck's president is January 14, 1991. The date below Quantum's president's signature is January 17, 1991. In addition, Druck submitted a copy of the letter which transmitted the first contract to Quantum. (Dkt. 138-1). The letter was dated January 15, 1991, which was one day after Druck's president executed the contract. And the letter enclosed two originals of the contract, signed only by Druck's president.

Notwithstanding this evidence, Quantum's president averred that Druck sent "two unsigned duplicate copies" of the first contract. (Dkt. 128, Friedland Aff. ¶ 4). He further averred that he signed the contracts and sent them to Druck's president "for his signature." (*Id.*).

Considering the record as a whole, no reasonable jury could find that Quantum executed the contract before Druck. Quantum did not offer any explanation for the contradiction between the execution dates on the contract and the averments of its president. Nor did Quantum attempt to explain the letter from Druck's president which transmitted two originals of the contract that only he had signed. Quantum has never suggested that the dates in the first contract were false or

inaccurate. To the contrary, Quantum attached a copy of the first contract to its amended complaint. On this record, there is no "genuine" issue that could lead a rational trier of fact to find that Druck was the last party to execute the contract. *Hickson*, 357 F.3d at 1260. The contract was last executed in Florida by Quantum.

It is contended that the first contract was a services contract and, as a result, the place of performance supplies the governing law. There is authority for the proposition that "matters connected with performance" are governed by the law of the place where the contract was to be performed. *See, e.g., State-Wide Ins. Co. v. Flaks*, 233 So. 2d 400, 402 (Fla. 3d DCA 1970). But there is also authority for the proposition that "[f]or contract cases, *lex loci contractus* will determine the applicable statute of limitations." *Lanoue v. Rizk*, 987 So. 2d 724, 727 (Fla. 3d DCA 2008).

In any event, the undisputed evidence demonstrates that the primary place of performance was Florida. The first contract appointed Quantum as the exclusive representative for certain Druck products in Florida.[1] Quantum's inside sales force carried out their marketing and sales efforts from Quantum's "functional headquarters" in Florida. (Dkt. 120-1, Friedland 10/22/10 Dep. at 9-11). In addition, Quantum performed application engineering and provided support and service from its Florida office. Further, Quantum's commission checks were sent to Florida.

To be sure, there is evidence that Druck required customers to send purchase orders directly to Druck in Connecticut. There is also evidence that Druck's products were manufactured in Connecticut and shipped to customers from Connecticut. But the first contract's essential purpose was to appoint Quantum as Druck's exclusive representative in Florida. The Connecticut contacts Quantum relies on were insignificant to that purpose. Indeed, those contacts neither appeared in the

---

[1] Druck was also appointed the representative for parts of Georgia and Alabama. However, there is no contention that the contract was performed primarily in either state.

4

first contract nor involved the obligations of Druck or Quantum that were set forth in that contract. Instead, the Connecticut contacts relate to the relationship between Druck and the customers. In short, the obligations in the first contract were performed primarily in Florida.[2]

Quantum suggests that Connecticut law should apply because the parties entered into a second contract which, by its terms, was governed by Connecticut law. Quantum cites no authority for the proposition a subsequent contract can offer evidence of the parties' intent at the time they entered into a different contract ten years earlier. And its position is unpersuasive.

Equally unavailing is Quantum's contention that the same law must be applied to both contracts. There is nothing in Florida's choice of law rules to support the application of a choice of law provision from a different contract that was entered into a decade later. Applying Quantum's theory would do violence to the uniformity and predictability that conflict of law principles are intend to achieve.

Further, disputes regarding commissions under the first contract are disputes under the first contract, not the second contract. Contrary to Quantum's argument, there is no justifiable reason for applying the terms of the second contract to a dispute regarding commissions under the first contract.

In sum, the first contract was made in Florida and was performed in Florida. Therefore, Florida law applies.

Under Florida law, Quantum had to commence this action within five years of the alleged

---

[2] This case is distinguishable from *Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corp.*, 364 So. 2d 15 (Fla. 4th DCA 1978). *Boat Town* involved a "Direct Sales Contract" under which Boat Town became a dealer of certain Mercury products. 364 So. 2d at 16. The court held that the contract was performed primarily in Wisconsin, which was Mercury's principal place of business. *Id.* at 18.

Unlike the relationship between Druck and Quantum, Mercury sold and delivered products to Boat Town. *See id.* at 16, 18. Under the Direct Sales Contract, all shipments to Boat Town were made f.o.b. at Mercury's factory in Wisconsin, all pricing and credit decisions were made in Wisconsin, all orders had to be accepted by Mercury in Wisconsin, title to all goods was transferred to Boat Town in Wisconsin, Boat Town had to submit a certified financial statement each year to Mercury's office, and the agreement had to be renewed by an officer or manager of Mercury in Wisconsin. *Id.* at 18. These factors were not present in the first contract.

breach. *See* Fla. Stat. § 95.11(2)(b). The first contract required Druck to pay commissions "at the beginning of the month following the customer payment." (Dkt. 18-1, Am. Compl. Ex. A ¶ 5). Druck argues, and Quantum does not dispute, that the customer paid the final invoice for an order under the first contract on or before January 1, 2003. It follows that the last commission under the first contract was due on February 1, 2003. Quantum, however, did not commence this action until June 8, 2009, which was well over six years later. Quantum's claim for breach of the first contract is barred by Florida's statute of limitations.[3]

### The second contract

The second contract provided for the application of Connecticut law. Druck argues that Connecticut's statute of limitations bars the recovery of commissions that were due more than six years before Quantum filed this action. *See* Conn. Gen. Stat. §52-576(a). Quantum agrees that Connecticut law applies but contends that the continuing course of conduct doctrine tolls the limitations period.

Under Connecticut law, "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." *Bellemare v. Wachovia Mortg. Corp.*, 894 A.2d 335, 344 (Conn. App. 2006) (quotation omitted). The doctrine applies where the defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the original wrong; and (3) breached that continuing duty." *Sherwood v. Danbury Hosp.*, 746 A.2d 730, 737 (Conn. 2000).

The parties' dispute focuses on the second element: a continuing duty. Although there is evidence that Druck did not pay numerous commissions over the course of several years, this

---

[3] Quantum's claim would also be barred by Connecticut's six year statute of limitations. As discussed below, Quantum's breach of contract claim cannot be tolled under Connecticut's continuing course of conduct doctrine.

evidence fails to demonstrate a continuing duty "related to the original wrong." *Id.* As Quantum's president conceded, each failure to pay a commission constituted an independent breach of the second contract. (Dkt. 120-1, Friedland 10/22/10 Dep. at 153).

Quantum has not cited any case which found the existence of a continuing duty under facts comparable to this action. A continuing duty will only be found where there is "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Sherwood*, 746 A.2d at 736 (quotation omitted). Quantum argues that Druck concealed shipments of products to customers in its territory.[4] But Druck's failure to disclose Quantum's right to a commission was the initial wrong, not an ongoing or recurring wrongful act. *See Bellemare*, 894 A.2d at 345. And the parties' contract did not create any special or fiduciary relationship that imposed a continuing duty to disclose shipments entitling Quantum to a commission. *See Fichera v. Mine Hill Corp.*, 541 A.2d 472, 475 (Conn. 1988).

Quantum contends that Druck provided accountings in response to questions regarding the payment of certain commissions. Quantum argues that Druck owed a duty to provide an accurate accounting of the orders shipped to, billed to, or engineered in its territory. But as Quantum conceded at the hearing, there was no contractual duty to provide a periodic accounting in the second contract. Further, Quantum made no effort to demonstrate that the relevant accountings were provided within six years of the commencement of this action. This is fatal because any continuing duty, even one created by later wrongful conduct, "must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Sherwood*, 746 A.2d at 736 (quotation omitted).

---

[4] Quantum did not raise a fraudulent concealment argument in its response to Druck's motion for summary judgment. At the hearing, Quantum expressly disclaimed any reliance on a fraudulent concealment theory.

In sum, Quantum has not established an ongoing duty related to the failure to pay each commission, which continued until at least six years before Quantum filed this action. Therefore, the continuing course of conduct doctrine does not apply. As Quantum has not advanced any other tolling theory, the statute of limitations bars its claim for any commissions under the second contract which were due before June 8, 2003.

### Specific categories of commission payments

In addition to the statute of limitations, Druck raises five arguments which relate to specific categories of commissions. At the hearing, Druck conceded that Quantum has raised triable issues of fact for four of the five additional arguments. The sole remaining argument is that Quantum cannot recover commissions for customer orders that were placed after the second contract terminated on April 3, 2008. The second contract provides:

> In the event that this contract is terminated, Druck will continue to pay commissions against all orders which are <u>received and accepted before the effective termination date</u>. Commissions will only be paid for the products and quantities shipped and invoiced within 12 months following the effective termination date. No commissions will be paid for invoices issued after the 12-month period.

(Dkt. 18-2, Am. Compl. Ex. B ¶ 7.0) (emphasis added).

Druck argues that Quantum cannot recover commissions for 155 orders that customers placed after the termination date. Quantum's president, however, averred that Druck received "blanket orders" from five specific customers prior to April 3, 2008. (Dkt. 128, Friedland Aff. ¶ 12). The 155 orders challenged by Druck appear to include orders by these five customers. (Dkt. 118-1, Soldan Decl. Ex. A). There is an unresolved factual dispute as to whether orders by the five customers after April 3, 2008 were, in fact, part of pre-termination "blanket orders." Partial summary judgment is therefore improper.

## Counterclaim

Druck filed a counterclaim seeking damages based on Quantum's failure to pay for products it purchased from Druck. Specifically, Druck requests $36,135.59 in damages, plus attorney's fees and costs. Quantum does not deny that it owes $36,135.59 but seeks to apply the amount as a setoff. At the hearing, Quantum did not oppose the entry of partial summary judgment, provided that the judgment would not be executable until the resolution of its claims.

## Conclusion

Accordingly, Defendant's motion for partial summary judgment (Dkt. 114) is GRANTED *in part* and DENIED *in part*.

(1)  Partial summary judgment is entered in favor of Defendant on Count I.

(2)  Partial summary judgment is entered in favor of Defendant on Count II, with respect to all commission payments that were due before June 8, 2003.

(3)  Partial summary judgment is entered in favor of Defendant on its counterclaim in the amount of $36,135.59.[5] This amount shall not be executable until the entry of final judgment.

(4)  Defendant's motion is denied in all other respects.

**DONE AND ORDERED** this 12th day of May, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of record

---

[5] Druck's request for a determination of its entitlement to attorney's fees is deferred, pending the filing of legible copies of the relevant attorney's fee provisions in the terms and conditions governing the purchase orders. (*See* Dkt. 61-1). Any copies that are filed shall be properly authenticated.